UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

JOSEPH LAUX
520 Country Club Lane
Onalaska, WI 54650

    Plaintiff,

v.

GREEN JACKET AUCTIONS, INC.,
221 Morris Avenue
Denville, NJ 07834,

SHIRLEY CASPER, individually
and as the Personal Representative of the
Estate of William Earl Casper Jr.
2169 Yarrow Drive
Mapleton, UT 84664, and

BYRON CASPER
482 S. 2500 West Unit #1
Springville, UT  84663

    Defendants.

Case No:  3:19-cv-706

## COMPLAINT

Plaintiff  Joseph Laux ("Joseph") by his attorneys, DeWitt LLP, and for his Complaint against Defendants Green Jacket Auctions, Inc. ("Green Jacket"), Shirley Casper, on information and belief the personal representative of the Estate of William Earl Casper Jr. ("Estate") and individually (in both capacities, "Shirley"), and Byron Casper ("Byron") alleges and states as follows:

### NATURE OF THE ACTION

1. This is an action for breach of contract and breach of warranty under the Uniform Commercial Code ("UCC"), civil theft, conversion, and misrepresentation. Shirley, by Byron Casper and Green Jacket as her agents, sold golf memorabilia to Joseph for which he paid

$135,000, but that she was prohibited from selling by agreement with the United States Golf Association ("USGA"). Joseph was unaware of this encumbrance, and neither Shirley nor her agents disclosed it to Joseph prior to the sale in violation of Wis. Stat. § 402.312 (UCC 2-312). Green Jacket affirmatively misrepresented to Joseph that there were no encumbrances or cloud on title.  Green Jacket wrongfully retains possession of goods for which Joseph paid.

## PARTIES, JURISDICTION AND VENUE

2. Joseph is an individual and a citizen of the State of Wisconsin with an address of 520 Country Club Lane, Onalaska, WI 54650.

3. Shirley is an individual and a citizen of the State of Utah with an address of 2169 Yarrow Drive Mapleton, UT 84664. Shirley is the widow of William Earl Casper Jr. ("Billy Casper"), an American professional golfer and one of the most prolific winners on the PGA tour during his prime in the mid-1950s through the mid-1970s.  On information and belief, Shirley is, or was, the personal representative of the Estate of Billy Casper, or in the alternative, Shirley inherited, or otherwise gained control of, Billy Casper's extensive collection of golf memorabilia upon his death on or about February 7, 2015.

4. Byron is an individual and a citizen of the State of Utah with an address of 482 S. 2500 West Unit #1, Springville, UT  84663. Byron is one of Billy Casper's and Shirley's sons and has held himself out to be Shirley's representative as to the sale of golf memorabilia in Billy Casper's collection after Billy Casper's death.

5. Green Jacket is a Florida corporation listing its current principal place of business as 221 Morris Avenue, Denville, NJ 07834.  Green Jacket is engaged in the business of conducting auctions and sales of sports memorabilia and holds itself out as having special

2

expertise in specializing in the auctioning and sale of golf-related memorabilia. Green Jacket acted as Shirley's agent in the sale of goods in exchange for a fee.

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because Joseph is a citizen of a different state than Shirley, Byron, and Green Jacket, and therefore, complete diversity of citizenship exists between the parties. Additionally, the amount in controversy exceeds the sum of $75,000.

7. This Court has personal jurisdiction over Shirley, Byron, and Green Jacket under Wis. Stat. § 801.05(5)(e) because this action relates to goods actually received by Joseph in Wisconsin from Green Jacket acting on behalf of Shirley and Byron. There is also personal jurisdiction over Shirley, Byron, and Green Jacket in Wisconsin under Wis. Stat. § 801.05(5)(c) because this action arises out of a promise made by Green Jacket to deliver goods to Joseph in Wisconsin, on Shirley and Byron's behalf. Moreover, the transaction between Joe and Green Jacket and Shirley and Byron contemplates a substantial connection with Wisconsin. Finally, Green Jacket, as Shirley and Byron's agent, has had substantial contacts with Wisconsin in reference to the transaction, including emails and phone calls to Joseph in Wisconsin, solicitation of Joseph's business in Wisconsin, and acceptance of payments from Joseph from financial institutions based in Wisconsin.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim occurred in this District, and Shirley, Byron, and Green Jacket are subject to personal jurisdiction in this District.

## FACTS

9. Either Billy Casper prior to his death on or about February 7, 2015, or Shirley, whether independently or by her agent, Byron, as personal representative of the Estate or

individually after Billy Casper's death, engaged Green Jacket as agent to sell or auction certain golf memorabilia related to Billy Casper's playing career.

10. On February 19, 2016, Ryan Carey ("Carey"), one of the two founders and principals of Green Jacket acting as employee, agent, or otherwise on behalf of Green Jacket, sent a mass email to numerous recipients, including Joseph, offering for sale the four following Billy Casper U.S. Open trophies for the following amounts: 1959 U.S. Open (90% scale): $110,000; 1966 U.S. Open (90% scale): $110,000; 1959 U.S. Open (50% scale – Player Trophy): $35,000; 1966 U.S. Open (50% scale – Player Trophy): $35,000.

11. On or about February 19, 2016, Carey represented to Joseph in a telephone conversation that the four trophies listed above had clear title and were unencumbered.

12. On the same day, Joseph agreed to purchase the 1959 U.S. Open (90% scale) trophy for $110,000 and the 1966 U.S. Open (50% scale – Player Trophy), which Green Jacket offered for a discount, for $25,000. A copy of the email exchanges reflecting Green Jacket's offer and Joseph's agreement is attached hereto as **Exhibit A**.

13. On February 23, 2016, Carey sent Joseph an invoice via email in the total amount of $135,000. A copy of this email and accompanying invoice is attached hereto as **Exhibit B**.

14. On or about February 26, 2016, Joseph paid the entire invoiced amount to Green Jacket.

15. After the sale, Green Jacket and Joseph agreed to exchange the 1966 U.S. Open (50% scale – Player Trophy) for the 1959 U.S. Open (50% scale – Player Trophy) and a $1,500 payment to Joseph. The 1959 U.S. Open (90% scale) trophy and 1959 U.S. Open (50% scale – Player Trophy) are herein referred to as the "Trophies."

16. Joseph shipped the 1966 U.S. Open (50% scale – Player Trophy) trophy on March 6, 2016.

17. To date, Green Jacket retains possession of the 1959 U.S. Open (50% scale – Player Trophy) and has not paid $1,500 to Joseph as agreed.

18. On or about December 11, 2017, Joseph entered into an Auction Consignment Agreement with Heritage Auctions, Inc., a Texas Corporation ("Heritage"), to offer the Trophies for sale at an auction to be held February 24, 2018 through February 25, 2018 ("Auction Date").

19. On information and belief, before the Auction Date, Mike Guitierrez, an employee and agent of Heritage, contacted Byron Casper to inquire whether he might have any additional Billy Casper memorabilia to offer for sale at the same time as the Trophies.

20. On information and belief, Byron Casper informed Mike Guitierrez or some other employee or agent of Heritage that the Trophies could not be sold as a result of a prior agreement Billy Casper made with USGA.

21. On or about January 31, 2018, Byron Casper sent a letter "on behalf of his mother Shirley Casper," to Chris Ivy, Director of Sports for Heritage (the "Letter"). A copy of the Letter, which Heritage forwarded to Joseph, is attached hereto as **Exhibit C**.

22. The Letter states, in relevant part:

- "The USGA has banned the sale of ANY US Open trophies on the open market and has threatened to sue anyone who tries to sell them. Beings that they are the largest governing body in golf, this would be negative for all of us.
- The deal that Billy and Shirley Casper did with the buyer, was only on the condition that it would not be sold for a minimum of 10 years and would never be sold on the open market. . . .
- The Casper family is currently in negotiations with the USGA for Billy Casper's 1959 US open trophy as well as four miniature replica's [sic]. By selling the 1966 US open trophy openly now, it will irrefutably destroy the current negotiations between the USGA and Billy Casper's widow and family. These trophy's [sic] are worth over 250k together.

- If the USGA comes after the Casper family, the seller, GJA or Heritage Auctions, all of our reputations in the golf world will be hurt. This negative press isn't good for any one as well as future business.
- Last but not least, is the lack of respect that this seller has shown in not honoring a promise made directly to Billy and Shirley Casper before Billy passed away. He was only allowed this trophy on the back of this promise made and it has severely hurt Shirley Casper that anyone would tarnish Billy Casper, his widow and family by doing this.

(Ex. C.)

23. As a result of the Letter and Byron Casper's allegations, the Trophies were removed from the Heritage auction.

24. After receipt of the Letter, Heritage sent Joseph a copy of the January 6, 2015 Letter Agreement by and between Billy Casper and the USGA ("USGA Agreement"). A copy of the USGA Agreement is attached hereto as **Exhibit D**.

25. In relevant part, the USGA Agreement provides that Billy Casper's request for replica trophies would only be granted by the USGA if he agreed that (a) "[n]o commercial use will be made of the Replica [trophies] without prior knowledge and written consent of the USGA" and (b) the USGA have an opportunity to exercise a "first right to buy back the Replica [trophies]" trophies prior to all third-party sales.

26. The USGA Agreement further provides that Billy Casper entered into the Agreement "on [his] own behalf, and on behalf of [his] successors, heirs, estate, corporate partners, affiliates parent companies, subsidiaries and assigns . . . ."

27. Prior to receipt of the Letter, Joseph had no knowledge of the USGA Agreement or any encumbrances of title to the Trophies.

28. No representative of the Casper family, Green Jacket, or any third-party disclosed the USGA Agreement, or any encumbrance on title to the Trophies prior to their sale to Joseph;

6

and as previously alleged herein, Carey represented to Joseph in a telephone conversation that the Trophies had clear title and were unencumbered.

## COUNT ONE:  BREACH OF CONTRACT
*Against Green Jacket*

29. Joseph realleges and incorporates the preceding paragraphs of this Complaint by reference as if set forth in full herein.

30. Green Jacket, as Shirley's agent, contracted with Joseph for good and valuable consideration to sell the Trophies to Joseph at a cost of $135,000 (the "Contract").

31. Joseph has timely paid all amounts due and owing for the Trophies under the Contract.

32. Green Jacket, acting as Shirley's agent, has breached the Contract by failing to convey and transfer possession of the 1959 U.S. Open (50% scale – Player Trophy) to Joseph.

33. As a result of Green Jacket's ongoing breach of the Contract, Joseph has suffered, and continues to suffer, damages arising from his purchase of the Trophies.

34. Joseph has been deprived of the benefit of the $135,000 he paid for the Trophies.

## COUNT TWO:  BREACH OF WARRANTY OF TITLE
*Against Shirley, Byron, and Green Jacket*

35. Joseph realleges and incorporates the preceding paragraphs of this Complaint by reference as if set forth in full herein.

36. The Contract was one for goods, and thus, the Uniform Commercial Code applies to the contract.

37. Shirley, and Byron and Green Jacket as her agents, sold and contracted to sell the Trophies, and thus are "sellers" under Wis. Stat. § 402.102(1)(d).

38. At the time of the Contract and sale, Joseph had no knowledge of any encumbrance of title to the Trophies.

7

39. Pursuant to Wis. Stat. § 402.312(1)(a), there was in the Contract a warranty by the seller that title to the Trophies would be good, and there transfer rightful.

40. There was in the Contract a warranty by the seller that the Trophies would be delivered free from any security interest or other lien or encumbrance of which the buyer had no knowledge at the time to contracting sale pursuant to Wis. Stat. § 402.312(1)(b).

41. At the time of the Contract there existed no specific language or circumstances which would have given Joseph reason to know that the Shirley did not claim unencumbered title to the Trophies or that she was purporting to sell only such limited or encumbered right as she had.

42. Shirley, and Byron and Green Jacket as her agents, breached the warranty of title because the Trophies are encumbered by the USGA Agreement.

43. Joseph has been damaged by Shirley, Byron, and Green Jacket's breach of warranty of title as set forth herein, including, diminution of value in the Trophies and lost opportunities for sale.

**COUNT THREE: CONVERSION**
*Against Green Jacket*

44. Joseph realleges and incorporates the preceding paragraphs of this Complaint by reference as if set forth in full herein.

45. Green Jacket intentionally retained possession of the Trophies belonging to Joseph.

46. Green Jacket retains possession of the 1959 U.S. Open (50% scale – Player Trophy) without Joseph's consent and without lawful authority to do so.

47. Green Jacket's actions with respect to the 1959 U.S. Open (50% scale – Player Trophy) seriously interfered with Joseph's right to possess the Trophies.

8

48.     As a result of Green Jacket's actions, Joseph has been damaged in various respects, in an amount to be determined at trial.

## COUNT FOUR:  CIVIL THEFT
*Against Green Jacket*

49.     Joseph realleges and incorporates the preceding paragraphs of this Complaint by reference as if set forth in full herein.

50.     Green Jacket intentionally took, used, transferred and retained possession of the 1959 U.S. Open  (50% scale – Player Trophy) without the owner, Joseph's consent.

51.      Green Jacket did so and with the intent to deprive the Joseph permanently of possession of the 1959 U.S. Open  (50% scale – Player Trophy).

52.     Pursuant to Wis. Stat. § 895.446, Joseph is entitled to recover from Green Jacket the full amount of $135,000, together with his costs and actual attorneys' fees and exemplary damages in the amount of three times the amount awarded, plus any accrued interest, or such other amount allowed under § 895.446 as the Court may deem just and equitable.

## COUNT FIVE: INTENTIONAL MISREPRESENTATION
*Against Green Jacket*

53.     Joseph realleges and incorporates the preceding paragraphs of this Complaint by reference as if set forth in full herein.

54.     As further alleged above, on or about February 19, 2016, Carey, acting as employee, agent, or otherwise on behalf of Green Jacket, represented to Joseph in a telephone conversation that the Trophies had clear title and were unencumbered.

55.     Carey's representations were untrue in that the Trophies were subject to the prohibitions on resale contained in the USGA Agreement.

56.     Carey knew these representations were untrue or made these representations recklessly without caring whether they were true or false.

57. Carey made these representations with the intent to deceive or to induce Joseph to act upon them to Joseph's pecuniary damage.

58. Joseph believed Carey's representations to be true and reasonably relied upon them to his detriment.

59. Carey acted maliciously toward Joseph or in intentional disregard of the rights of Joseph in making these misrepresentations to Joseph.

60. As a result of Carey's misrepresentations, Joseph suffered damages in an amount to be determined at trial.

### COUNT SIX: STRICT LIABILITY MISREPRESENTATION
*Against Green Jacket*

61. Joseph realleges and incorporates the preceding paragraphs of this Complaint by reference as if set forth in full herein.

62. As further alleged above, on or about February 19, 2016, Carey, acting as employee, agent, or otherwise on behalf of Green Jacket, represented to Joseph in a telephone conversation that the Trophies had clear title and were unencumbered.

63. Carey's representations were untrue in that the Trophies were subject to the prohibitions on resale contained in the USGA Agreement.

64. Carey's representations were untrue, deceptive, misleading or made recklessly without caring whether they were true or false.

65. Carey knew or should have known that these representations were untrue or recklessly made without caring whether they were true or false.

66. Joseph believed Carey's misrepresentations to be true and relied upon them to his detriment.

67. Green Jacket had an economic interest and stood to make a financial gain if

Joseph purchased the Trophies.

68. As a result of Carey's misrepresentations, Joseph has suffered damages in an amount to be determined at trial.

### COUNT SEVEN: NEGLIGENT MISREPRESENTATION
*Against Green Jacket*

69. Joseph realleges and incorporates the preceding paragraphs of this Complaint by reference as if set forth in full herein.

70. As further alleged above, on or about February 19, 2016, Carey, acting as employee, agent, or otherwise on behalf of Green Jacket, represented to Joseph in a telephone conversation that the Trophies had clear title and were unencumbered.

71. Carey's representations were untrue in that the Trophies were subject to the prohibitions on resale contained in the USGA Agreement.

72. Carey was negligent in making these untrue representations to Joseph.

73. Joseph believed Carey's representations to be true and relied upon them.

74. As a result of Carey's misrepresentations, Joseph suffered damages in an amount to be determined at trial.

### COUNT EIGHT: VIOLATION OF WIS. STAT. §100.18
*Against Green Jacket*

75. Joseph realleges and incorporates the preceding paragraphs of this Complaint by reference as if set forth in full herein.

76. As further alleged above, on or about February 19, 2016, Carey, acting as employee, agent, or otherwise on behalf of Green Jacket, represented to Joseph in a telephone conversation that the Trophies had clear title and were unencumbered.

77. These representations were untrue, deceptive, or misleading in violation of Wis. Stat. § 100.18, in that the Trophies were subject to the prohibitions on resale contained in the USGA Agreement.

78. Carey knew these representations were untrue when he made them and made these representations with the intent of inducing Joseph to purchase the Trophies.

79. Carey acted maliciously toward Joseph or in intentional disregard of the rights of Joseph in making these misrepresentations to Joseph.

80. In undertaking purchasing the Trophies, Joseph reasonably relied upon Carey's representations to its detriment.

81. As a result, Joseph is entitled to recover damages in an amount to be determined at trial, together with its reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Joseph respectfully requests that the Court enter judgment in its favor and against the Defendants as follows:

A. Award judgment in Joseph's favor on all counts;

B. Award Joseph his compensatory, consequential, and incidental damages, plus interest, arising from Green Jacket's breach of contract; Shirley's, Byron's and Green Jacket's breaches of warranty of title; and Green Jackets conversion and misrepresentations ;

C. Award Joseph's reasonable costs and actual attorneys' fees pursuant to Wis. Stat. §§ 895.446 and 100.18 as against Green Jacket;

D. Award Joseph exemplary damages in the amount of three times the amount awarded, plus any accrued interest as against Green Jacket; and

D. Award Joseph such further relief as the Court deems just and proper.

**PLAINTIFF JOSEPH LAUX HEREBY DEMANDS A
JURY TRIAL ON ALL TRIABLE ISSUES.**

Dated August 29, 2019.

        **DEWITT LLP**

        By:    s/ Shannon A. Allen
                   Shannon A. Allen, SBN 1024558
                   Matthew J. Hills, SBN 1086335
                   13845 Bishop's Drive, Suite 300
                   Brookfield, WI 53005-6617
                   Tel.: (262) 754-2840
                   Fax: (262) 754-2845
                   Email: saa@dewittllp.com
                              mjh@dewittllp.com

        **ATTORNEYS FOR PLAINTIFF JOSEPH LAUX**