IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOSEPH LAUX,

                Plaintiff,

v.

GREEN JACKETS AUCTIONS, INC.,
BYRON CASPER and SHIRLEY
CASPER, individually and as the personal
Representative of the Estate of William
Earl Casper Jr.,

                Defendants.

OPINION AND ORDER

19-cv-706-wmc

---

In this lawsuit, plaintiff Joseph Laux asserts an assortment of state law claims against defendants Green Jacket Auctions, Inc., Byron Casper and Shirley Casper, the latter in both her individual capacity and as the personal representative of the Estate of William Early Casper Jr. The claims all arise out of Shirley Casper's sale to Laux of certain golf memorabilia through her agents, Byron Casper and Green Jackets, despite her being prohibited from selling by virtue of a written agreement with the United States Golf Association ("USGA") except under narrow circumstances neither disclosed or satisfied.[1] Plaintiff also alleges that: (1) Green Jacket misrepresented to him that the goods were sold with no encumbrances on the title; and (2) the Caspers failed to inform plaintiff of restrictions on his ability to resell certain golf trophies. None of the defendants answered the complaint or otherwise appeared. Plaintiff subsequently settled his claims against

---

[1] The court has jurisdiction over this action on diversity grounds. 28 U.S.C. § 1332(a). Plaintiff is a citizen of Wisconsin; the Casper defendants are citizens of Utah; and Green Jacket is a citizen of Florida and New Jersey. (Compl. (dkt. #1) ¶¶ 2-5.) Moreover, the amount in controversy exceeds $75,000.

defendant Green Jacket. Accordingly, the clerk's office entered default against the two Casper defendants for failure to respond. (Dkt. #11.) Before the court is plaintiff's pending motion for default judgment against the two Casper defendants, seeking $108,513.95. (Dkt. #12.) The court held a telephonic hearing on plaintiff's motion on June 17, 2020, at which Mr. Laux appeared in person and through his counsel Shannon Allen. Again, the Caspers failed to participate. Although Mr. Laux has largely established entitlement to a sizable monetary award in the form of a default judgment, he will be given an opportunity to supplement his evidentiary submissions before the court arrives at the specific amount of that award.

FACTS

For purposes of deciding plaintiff's motion for default judgment, "allegations in the complaint relating to liability are true." *See Domanus v. Lewicki*, 742 F.3d 290, 303 (7th Cir. 2014). Here, plaintiff has alleged facts in his Complaint that establish liability, as well as submitted supporting affidavits and now supplemented by sworn testimony by Mr. Laux supporting his damages' claim, which the court will briefly summarize.

On February 19, 2016, Green Jacket sent a mass email to a number of recipients, including plaintiff Laux, offering for sale four Billy Casper U.S. Open trophies on behalf of Byron and Shirley Casper.[2] Through a series of email exchanges, plaintiff ultimately purchased for $135,000 two of those trophies -- a 1959 U.S. Open Trophy (90% scale)

---

[2] William Earl Casper, Jr., better known as "Billy" Casper, was a renowned professional golfer between the mid-1960s throughout the mid-1970s, who passed away in February 2015. *See* "Billy Casper," Wikipedia, https://en.wikipedia.org/wiki/Billy_Casper. Defendant Byron Casper was Billy's son, and defendant Shirley Casper was Billy's wife.

2

and a 1966 U.S. Open Trophy (50% scale with case). Plaintiff was later able to trade the latter trophy for a Billy Casper 1959 U.S. Open Player Trophy (50% scale) of equal or slightly lesser value and $1,500. (Compl. (dkt. #1) ¶¶ 15, 17).[3]

In December 2017, however, plaintiff entered into an agreement with third-party Heritage Auctions, Inc., to offer his 1959 trophies for sale at an auction to be held in February 2018. As part of that planned auction, Heritage reached out to defendant Byron Casper to acquire other "Billy Casper" memorabilia that could be offered for sale at the same auction. Only then, in a letter dated January 31, 2018, did Byron advise, on behalf of his mother Shirley, that the trophies could not be sold because the USGA had banned the sale of any U.S. Open trophies on the open market, and in particular, that Billy and Shirley Casper sold the trophies to plaintiff Laux conditioned on those trophies: (1) not being sold for a minimum of 10 years, and (2) never being sold on the open market. (Laux Decl. (dkt. #16) ¶¶ 18-19; Laux Decl., Ex. C (dkt. #16-3).)

As part of this letter exchange, Heritage also received a copy of a January 6, 2015, letter agreement between Billy Casper and the USGA, in which it agreed to provide replica trophies to Billy Casper on the express conditions that: (1) "[n]o commercial use will be made of the Replica [trophies] without prior knowledge and written consent of the USGA"; and (2) the USGA would have the opportunity to exercise a "first right to buy back the Replica [trophies]" before any third-party sale could proceed. (Laux Decl. (dkt. #16) ¶¶ 21-22; Laux Decl., Ex. D (dkt. #16-4).) This agreement with USGA also stated that Billy

---

[3] In his testimony at the June 17, 2020, hearing, Laux represented that the $1,500 "bonus" payment was because the 1966 trophy had been won on the buyer's home course.

Casper entered into the agreement "on [his] own behalf, and on behalf of [his] successors, heirs, estate, corporate partners, affiliates parent companies, subsidiaries and assigns." (*Id.* ¶ 23.) Notwithstanding all of this, Laux avers that: (1) a principal of Green Jacket told him that the trophies had clear title and were unencumbered; and (2) at *no* time was he informed of the USGA agreement with Billy Casper.

After filing suit, plaintiff entered into a confidential settlement agreement with Green Jacket, in which he received other sports memorabilia in exchange for the dismissal of his claims against Green Jacket. Based on his knowledge and experience in the sports memorabilia market, Laux estimates "that the net value to me" of this other memorabilia is $27,968.05. (Laux Decl. (dkt. #16) ¶ 33.) Accordingly, he claims that his remaining damages are $108,513.95, exclusive of attorneys' fees or costs. (*Id.* ¶ 34.)[4]

## OPINION

Plaintiff's request for damages is straight-forward: he seeks a default judgment against the remaining defendants in the amount paid for the two, Billy Casper replica U.S. Open trophies after deducting the estimated net value to him of the memorabilia received in settlement from defendant Green Jacket. The primary problem with plaintiff's requests is that the plaintiff is placing a personal value on unknown memorabilia (by virtue of his confidential settlement agreement with Green Jacket), rather than the market value of the

---

[4] This amount is supposedly derived from subtracting from the original purchase price of $135,000 for the two replica trophies, *minus* $1,500 obtained in swapping out one of the trophies, and the $27,968.05, although the court obtains a slightly lower amount of $105,531.95. Regardless, since plaintiff will be required to supplement his proof of fair market value of the sports memorabilia obtained in settlement with Green Jacket, he will have a chance to clarify the precise monetary damages he claims and how he arrived at that number.

memorabilia, *and* there appears to be *no* reduction for the actual value of the two replica Billy Casper trophies that plaintiff has retained, even though the trophies can be sold to a third-party subject only to a right of first refusal by the USGA. Admittedly, this condition, along with the restrictions on the trophies "commercial use" (whatever that means) reduces plaintiff's purchase "free and clear," but that value is almost certainly not *zero*.[5]

The court has one, additional concern with plaintiff's requested damage award  In the unlikely event that plaintiff received payment of the full monetary judgment from the Caspers, they would technically be entitled to return of the two trophies still in plaintiff's possession *or* if sold at arms-length, a reduction of that amount from the default judgment. Again, this is an issue that plaintiff may address in his supplemental submission.[6]

ORDER

IT IS ORDERED that:

1) Plaintiff may supplement his proof of monetary damages as set forth above and set forth on the record during today's hearing.

2) Defendants Byron and Shirly Casper may have ten (10) days to respond from the filing of that supplemental proof.

---

[5] While plaintiff initially paid $135,000 for the trophies, he acknowledged at the hearing that defendant Green Jacket reimbursed him $1,500 after Green Jacket and Laux swapped the 1966 Billy Casper Player Trophy for the 1959 trophy, taking into account this reimbursement, plaintiff's total payment was $133,500, not $135,000.

[6] Plaintiff also indicated at the hearing that he is not seeking attorney's fees and cots in light of the economic loss doctrine.

3) At that point, the court will close the record for purposes of entry default judgment.

Entered this 18th day of June, 2020.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge